**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JESSICA MASONER.**, | ) CIVIL ACTION NO. 13-1458 |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| **EDUCATION MANAGEMENT** | ) |
| **CORPORATION,** | ) |
| | ) |
| Defendant. | ) |

## OPINION

**CONTI, Chief District Judge**

### I.      Introduction

On October 8, 2013, plaintiff Jennifer Masoner ("plaintiff" or "Masoner") filed a three-count complaint against her employer, Education Management Corporation ("defendant" or EDMC"), alleging sex discrimination in violation of 42 U.S.C. § 2000e-2 (count I), retaliation in violation of 42 U.S.C. § 2000e-3 (count II), and retaliation in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FSLA"), (count III).   On December 6, 2013, EDMC filed a motion to dismiss the complaint for lack of subject-matter jurisdiction and a brief in support of the motion. (ECF Nos. 12, 13.) On January 7, 2014, Masoner filed a response in opposition to the motion to dismiss and a brief in support of the response. (ECF Nos. 16, 17.)

On January 21, 2014, the court held a hearing with respect to EDMC's motion to dismiss. After consideration of the submissions by the parties and the arguments presented at the hearing, the court determined EDMC's motion to dismiss would be granted and the complaint would be dismissed with prejudice. This opinion sets forth the court's reasoning for that decision.

## II. Factual Background

Masoner was hired by EDMC in 2005, and is currently employed by EMDC. (ECF No. 1 ¶¶ 7, 38, 85.) Masoner alleges that in May and June 2012, she discussed, and then was punished for discussing, gender-based compensation at EDMC. (Id. ¶ 66.) On May 16, 2012, Masoner requested a meeting with Colleen Schaefer ("Schaefer"), Masoner's human resources representative, to discuss the issues she was having in the workplace, including issues she had with her supervisor, Dr. Hilbelink ("Hilbelink"). (Id. ¶ 54.) On May 21, 2013, Masoner met with Schaefer and Jaclyn Mitchell ("Mitchell"), EDMC's senior human resources generalist. (Id. ¶ 58.) On May 22, 2013, Masoner met with Schaefer to discuss Masoner's concerns with respect to Hilbelink. (Id. ¶ 62.) On May 23, 2012, Masoner again met with Schaefer and Mitchell. (Id. ¶ 64.)

On June 12, 2012, Masoner completed an intake questionnaire with the Equal Employment Opportunity Commission (the "EEOC"). (ECF No. 17-1; ECF No. 1 ¶ 106.) Two days later, on June 14, 2012, Schaefer called Masoner on the telephone and told Masoner that she closed the investigation with respect to Hilbelink. (Id. ¶ 70.)

In or around July 2012, EDMC adopted a new Alternative Dispute Resolution Policy ("ADR Policy"). (Declaration of Trisha Earls (ECF No. 13-1) ¶ 2.) The ADR Policy provided, in pertinent part:

- "This policy is intended to create the exclusive means by which all work-related disputes between Education Management Corporation (and its related entities or asserted agents, hereinafter "the Company") and its employees will be promptly addressed and fairly resolved."

- "Accepting or continuing employment with the Company after receipt of this Policy constitutes agreement to abide by its terms."

- "This Policy is effective on and after July 1, 2012."

- There are four steps to resolution: (1) <u>Informal Resolution</u>—"Employees are encouraged to attempt to resolve any work place issue, if feasible, informally with their supervisor, with other members of management or with the assistance of the Human Resources or Employee Relations Department."; (2) <u>Submission to the Company's Senior Management</u>—"If not satisfactorily resolved in Step One, a dispute may be submitted in writing…to the ice President of Employee Relations."; (3) <u>Mediation</u>—"If the dispute is not resolved as a result of Steps One or Two, then prior to proceeding to Arbitration, all parties are encourages to participate in a formal Mediation session facilitated by a professional, neutral Mediator."; and (4) Binding Arbitration—"If the matter is not resolved at Step One, Two, or Three (or if the parties do not avail themselves of these opportunities), then all covered disputes…shall be submitted to Arbitration for final and binding resolution."

(ECF No. 13-1 at 8-9.)

On or about July 10, 2013, Masoner received a Dismissal and Notice of Rights letter (the "letter") from the EEOC. (ECF No. 17-4.)

On September 25, 2012, at 8:00 a.m., Jennifer Swenson ("Swenson"), EDMC's vice president of human resources for online higher education, sent an email to Masoner's work email address, i.e., jmasoner@southuniversity.edu. (<u>Id.</u> ¶ 6.) The email provided:

> EDMC has implemented an Alternative Dispute Resolution Policy to promptly and fairly address all work-related disputes. This policy allows for both informal and formal avenues for resolving concerns. This Policy is a term and condition of your continued employment with EDMC. Please click <u>here</u> to access the ADR Policy.
>
> Please acknowledge by clicking <u>here</u> that you received, reviewed and agree to comply with the Alternative Dispute Resolution Policy. Questions regarding the Alternative Dispute Resolution Policy should be directed to you appropriate Human Resources or Employee Relations Representative.

(ECF No. 13-1.) On the same day at 12:10 p.m., Masoner forwarded the email from Swenson with respect to the ADR Policy to her private email address, i.e., lascokk6@hotmail.com. (Earls' Decl. (ECF No. 13-1) ¶ 7.)

On October 8, 2013, Masoner filed the complaint in this case. (ECF No. 1.)

On November 5, 2012, at 11:14 a.m., Swenson sent Masoner another email with respect to the ADR Policy. (ECF No. 13-1 at 18.) The email provided:

> Recently, we notified all employees of EDMC's new Alternative Dispute Resolution (ADR) Policy and asked for acknowledgement of the policy. We have not yet received your acknowledgement. You can review the policy <u>by clicking here</u>, and we ask that all employees read and become familiar with the policy.
>
> In addition, please acknowledge the new ADR Policy <u>by clicking here</u> to signify that you received, reviewed and agree to comply with the policy. Questions regarding the ADR Policy should be directed to your appropriate Human Resources or Employee Relations Representative.

(ECF No. 13-1 at 18.)

Effective December 2, 2013, EDMC promoted Masoner and increased her salary. (Earls' Decl. (ECF No. 13-1) ¶ 10.) Masoner accepted and agreed to abide by all EDMC's then-existing policies, including the ADR Policy at issue in this case. (<u>Id.</u>)

Masoner never asked any questions about the ADR Policy, expressed a desire to reject or challenge the terms of the ADR Policy, indicated that she found the terms of the ADR Policy to be unfair or oppressive, or made any effort to rescind her acceptance of the ADR Policy and its terms. (Earls' Decl. (ECF No. 13-1) ¶ 11.)

### III.    Legal Standard

EDMC asserts its motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1), however, is not the correct rule of law under which to assert a contract-based defense requiring arbitration. The Third Circuit Court of Appeals has explained:

> Although [a] motion [is] styled as a motion to dismiss under Rule 12(b)(1), which is a vehicle for challenging subject matter jurisdiction, motions seeking the dismissal of a declaratory judgment action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 272 (3d Cir. 2004). Rather, such dismissals are

> "generally effected under Rule 12(b)(6)…or Rule 56." *Patterson*, 953 F.2d at 45
> n.1.

Liberty Mutual Fire Insurance Co. v. Yoder, 112 F. App'x 826, 828 (3d Cir. 2004). In other

words, the existence of a valid contract compelling arbitration between the parties does not strip

the court of its subject-matter jurisdiction. In this case, the court has federal claim jurisdiction,

pursuant to 28 U.S.C. § 1331, because Masoner sued EDMC under Title VII of the Civil Rights

Act of 1964, 29 U.S.C. 2000, *et seq.*, The Equal Pay Act of 1963, 29 U.S.C. § 206(d), and The

Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* (ECF No. 1 ¶ 1.) This court's jurisdiction over

Masoner's claims will not be compromised if EDMC is able to show Masoner agreed to arbitrate

her claims against EDMC; rather, if EDMC is able to show Masoner agreed to arbitrate her

claims against EDMC, the court will dismiss Masoner's action because EDMC will have

meritoriously asserted a defense in this case.

In Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013),

the court of appeals reconciled its precedent in which it applied Federal Rule of Civil Procedure

12(b)(6) to motions to compel arbitration with its precedent in which it applied Federal Rule of

Civil Procedure 56, i.e., the summary judgment standard, to motions to compel arbitration. The

court held that depending on the case before it, either standard may be appropriate. With respect

to the Rule 12(b)(6) standard, the court held:

> "[W]here the affirmative defense of arbitrability of claims is apparent on the face
> of a complaint (or ... documents relied upon in the complaint)," Somerset, 832
> F.Supp.2d at 481, "the FAA would favor resolving a motion to compel arbitration
> under a motion to dismiss standard without the inherent delay of discovery," id. at
> 482. That approach appropriately fosters the FAA's interest in speedy dispute
> resolution. In those circumstances, "[t]he question to be answered ... becomes
> whether the assertions of the complaint, given the required broad sweep, would
> permit adduction of proofs that would provide a recognized legal basis" for
> rejecting the affirmative defense. Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566,
> 567 (3d Cir.1979).

<u>Guidotti</u>, 716 F.3d at 773-74. With respect to the Rule 56 standard, the court held:

> [A] Rule 12(b)(6) standard is inappropriate when either "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to establish on its face that the parties agreed to arbitrate, <u>Somerset</u>, 832 F.Supp.2d at 482, or the opposing party has come forth with reliable evidence that is more than a "naked assertion ... that it did not intend to be bound" by the arbitration agreement, even though on the face of the pleadings it appears that it did. <u>ParKnit Mills</u>, 636 F.2d at 55.

> Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record.

> The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard. <u>See</u> <u>id.</u> (judging motion to compel arbitration under summary judgment standard where plaintiff presented "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits").

<u>Guidotti</u>, 716 F.3d at 774. Here, because EDMC attached documents to its motion to dismiss and Masoner responded by attaching documents to her response in opposition, the Rule 56 standard is appropriate to resolve the motion pending before this court.[1]

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. <u>Anderson v Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of

---

[1] No party objected to the court considering the motion as a motion for summary judgment. FED. R. CIV. P. 12(d).

record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court is to draw all reasonable inferences in favor of the nonmoving party. El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence, the court should draw all reasonable inferences against the moving party.")

> The United States Court of Appeals for the Third Circuit has stated:
>
> [I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course defeat a motion for summary judgment but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

Id. The court may consider material evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2721, at 40 (2d ed. 1983)); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957) ("[I]n considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence.").

### IV.    Discussion

EDMC argues Masoner's claims are covered by a mandatory arbitration agreement entered into by the parties, and, therefore, Masoner's complaint should be dismissed because this court lacks subject-matter jurisdiction to hear the present dispute under the Federal Arbitration Act (the "FAA").

The FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011). Section 2[2] of

---

[2] Section 2 of the FAA provides:

the FAA is the "'primary substantive provision of the Act,'" and reflects a "'liberal federal policy favoring arbitration'" and the "'fundamental principle that arbitration is a matter of contract.'" Id. (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010)). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts…and enforce them according to their terms." AT&T Mobility, 131 S.Ct. at 1746.

In In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006), the Third Circuit Court of Appeals explained:

> A court has the power to stay a proceeding if it determines that an issue falls under an applicable arbitration clause. 9 U.S.C. § 3. If one of the parties fails to comply with such an agreement, a court may order "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In re Mintze, 434 F.3d at 229. "[T]he threshold questions a district court must answer before compelling or enjoining arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). "In conducting this limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." Id.; Moses H., 460 U.S. at 24-25. The Third Circuit Court of Appeals has suggested that while the presumption in favor of arbitration applies to the second question, it "probably does not apply

---

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

to the first question." <u>Century Indemnity Co. v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 527 (3d Cir. 2009). This suggestion arises because "an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration[,]" and, therefore, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." <u>Id.</u> at 524.

### A. Existence of a Valid Agreement

To decide the first question, i.e., whether the parties entered into a valid agreement to arbitrate, "[a] federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 603 (3d Cir. 2002). The parties agree the applicable state law in this case is Pennsylvania law, and "[w]hen applying state law contract principles to arbitration agreements, courts look to the laws of the involved state or territory." <u>Marotta v. Toll Bros., Inc.</u>, Civ. Action No. , 2010 WL 744174, at *3 n.3 (E.D. Pa. March 3, 2010) (citing <u>Gay v. Creditinform</u>, 511 F.3d 369, 388 (3d Cir. 2007)). Here, according to the complaint, Masoner, a resident of Pennsylvania, was employed by EDMC, a corporation with a business address in Pennsylvania. (ECF No. 1 ¶¶ 5, 6.) Pennsylvania is, therefore, the state "involved" in this action.

In <u>Blair</u>, the Third Circuit Court of Appeals noted:

> Before concluding that there is a valid contract under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration."

<u>Id.</u> (quoting <u>ATACS Corp. v. Trans World Communications, Inc.</u>, 155 F.3d 659, 666 (3d Cir. 1998)). Masoner argues there is no valid arbitration agreement in this case because (1) she did not manifest an intention to be bound by the ADR Policy until she accepted the promotion on

December 2, 2013, and (2) there was no consideration for the acceptance of the ADR Policy prior to that date. Each of these arguments will be addressed below.

**1. Manifestation of intention to be bound**

"In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (citing Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)); see Cal. Sun Tanning USA, Inc. v. Elec. Beach, Inc., 369 F. App'x 340, 346 (3d Cir. 2010); 1 R. LORD, WILLISTON ON CONTRACTS § 4:1 (4th ed. 2007) ("In the formation of contracts…it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties."). Accordingly, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract." 1 R. LORD, WILLISTON ON CONTRACTS § 4:1 (4th ed. 2007). Here, Masoner manifested a clear intention to be bound by the ADR Policy on December 2, 2013, when she was promoted and agreed to abide by all EDMC's policies.

**2. Consideration**

"Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.'" Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)). Masoner argues her continued employment did not constitute consideration for the ADR Policy. EDMC argues federal courts in Pennsylvania have held continued employment constitutes consideration.

EDMC cites various decisions from the District Court for the Eastern District of Pennsylvania.[3] The court, however, does not need to decide whether continued employment by an employee constitutes consideration under Pennsylvania law.

In Blair v. Scott Specialty Gases, 283 F.3d 595, 604 n.3 (3d Cir. 2002), the plaintiff argued her continued employment was not adequate consideration for her agreement to arbitrate. The court did not decide whether continued employment may be sufficient to serve as adequate consideration because it found that there was adequate consideration in that case based upon both parties agreeing to arbitrate the claims between them. In other words, each party offered its promise to arbitrate as consideration for the other party's promise to arbitrate. Here, it is clear from the language in the ADR Policy that the ADR Policy applies with equal force to claims brought by either the employee or the employer. Therefore, when Masoner agreed to the ADR Policy on December 2, 2013, EDMC also agreed to arbitrate, and there was adequate consideration existed to support that agreement. Based upon the foregoing analysis, the undisputed evidence of record shows that Masoner and EDMC entered into a valid agreement to arbitrate, i.e., the ADR Policy. Whether Masoner's claims are covered the by ADR Policy will be addressed in section B below.

## B. Claims Covered by the ADR Policy

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Century Indemnity Co. v.

---

[3] See Evans v. Atria Assisted Living, Civ. Action No. 01-1193, 2001 WL 34355643, at *2 (E.D. Pa. Dec. 21, 2001); Wilson v. Darden Restaurants, Civ. Action. No. 99-5020, 2000 WL 150872, at *4 (E.D. Pa. Feb. 11, 2000); Gutman v. Baldwin Corp., Civ. Action No. 02-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002).

Certain Underwriters at Lloyd's, London, 584 F.3d 513, 527 (3d Cir. 2009) (quoting AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)).

Masoner does not dispute that she agreed to abide by the ADR Policy on December 2, 2013. Masoner argues that agreeing to the ADR Policy on December 2, 2013, did not have any effect on this case because (1) the parties' dispute arose prior to the effective date of the ADR Policy; and (2) Masoner filed her claims prior to the effective date of the ADR Policy. (ECF No. 17 at 9-12.) Masoner argues those actions predated her agreement to the ADR Policy, and, therefore, her claims in this case are outside the scope of the policy. Masoner does not cite any legal authority in support of her position, and her argument is not supported by the text of the ADR Policy or the presumption in favor of arbitration.

**1. Masoner argues her claims are not covered by the ADR Policy because the claims arose prior to the effective date of the ADR Policy.**

Masoner argues the ADR Policy "did not contain a provision making it applicable to events occurring before it became effective," and therefore, her claims, which arose in May and June 2012 when she was punished for discussing gender-based compensation, are not covered by the policy. In support of her argument, Masoner points to the language of the ADR Policy providing "[t]his Policy is effective on and after July 1, 2012" and applies to employees "employed on or after the Effective date of this Policy." (ECF No. 17 at 10.)

In light of the presumption in favor of arbitration, however, Masoner's arguments are not persuasive. The ADR Policy does not contain a retroactivity provision, but it does not *preclude* retroactive application. The purpose of the policy is to "create the exclusive means by which *all* work-related disputes between [EDMC]…and its employees will be promptly addressed and fairly resolved." (ECF No. 13-1 at 7) (emphasis added.) There is no temporal limit on the claims covered by the ADR Policy, i.e., there is no provision making the ADR Policy applicable only to

claims arising after the effective date of the policy, and the language of the ADR Policy must be read in accordance with the FAA presumption in favor of arbitration. Under those circumstances, the ADR Policy is susceptible of an interpretation that covers Masoner's claims in this case. In other words, the ADR Policy agreed to by Masoner on December 2, 2013, applies to *all* claims between Masoner and EDMC, including claims that arose prior to the effective date of the ADR Policy. See Century Indemnity Co., 584 F.3d at 527. In light of the foregoing analysis, Masoner's argument that the ADR Policy does not cover her claims because they arose prior to the effective date of the ADR Policy lacks merit and is not a basis for the court to deny EDMC's request to compel Masoner to arbitrate.

### 2. Masoner argues that her claims are not covered by the ADR Policy because she filed her claims prior to the effective date of the ADR Policy.

Masoner—without citation to legal authority—argues that her claims are not covered by the ADR Policy because she initiated this lawsuit prior to the formation of the parties' agreement on December 2, 2013, by filling out the intake questionnaire with the EEOC on June 12, 2012, and filing the complaint with this court on October 8, 2013. The ADR Policy, however, does not contain language precluding the application of the policy to claims addressed by a complaint filed with a court or an intake questionnaire submitted to the EEOC prior to the parties entering into the agreement.[4] Under those circumstances, the ADR Policy is susceptible of an interpretation that covers Masoner's claims in this case, i.e., in light of the broad language of the ADR Policy that it applies to "*all* work-related disputes between [EDMC]…and its

---

[4] It is not uncommon for parties engaged in litigation to agree to mediate or arbitrate claims after the claims are filed with a court. Masoner did not point to any legal authority suggesting that an ADR policy is—as a matter of law—ineffective with respect to claims filed with a district court prior to the parties entering into an agreement to arbitrate.

employees[,]" Masoner's claims that are the subject of the complaint and her EEOC intake questionnaire are covered by the ADR Policy and must be submitted to arbitration.

## V.     Conclusion

Based upon the foregoing, a reasonable jury could only find that the claims asserted by Masoner against EDMC in this case are subject to the arbitration agreement entered into by the parties on December 2, 2013. EDMC successfully asserted a defense to Masoner's lawsuit. EDMC's motion to dismiss (ECF No. 12) will be granted, and Masoner's complaint (ECF No. 1) will be dismissed with prejudice. An appropriate order will follow.

BY THE COURT:

Dated: May 2, 2014                                     /s/ JOY FLOWERS CONTI
                                                        Joy Flowers Conti
                                                        Chief United States District Judge